IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHRISTOPHER SCOTT, #R31806, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-671-RJD |
| | ) | |
| STEPHEN RITZ, MOHAMMED SIDDIQUI, and TARA CHADDERTON. | ) ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on the Motion for Partial Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendants Stephen Ritz and Mohammed Siddiqui (Docs. 41 and 42) and the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendant Tara Chadderton (Docs. 61 and 62). Plaintiff filed a Response (Doc. 53) to the Motion by Defendants Ritz and Siddiqui. Defendants Ritz and Siddiqui filed a Reply (Doc. 57), to which Plaintiff also replied (Doc. 58). Plaintiff also filed a Response (Doc. 64) to Defendant Chadderton's Motion for Summary Judgment.

**Background**

Plaintiff, an inmate of the IDOC, filed this suit *pro se* on June 20, 2019. Pursuant to 42 U.S.C. §1983, Plaintiff claims that his Eighth Amendment rights were violated at Menard Correctional Center. Plaintiff alleges that Defendants Dr. Siddiqui, Dr. Ritz, and Nurse Tara Chadderton were deliberately indifferent to his recurring chest pain, fainting, irregular heartbeat, and swollen hands and feet from June 2016 through January 2019. Following the Court's

threshold review conducted pursuant to 28 U.S.C. §1915A, Plaintiff proceeded on one claim of deliberate indifference against all three Defendants.

Plaintiff alleges that on August 2, 2017, Dr. Siddiqui sent Plaintiff to Chester Hospital because Plaintiff had chest pains. When Plaintiff returned to Menard, Dr. Siddiqui recommended that he undergo a full cardiac evaluation. Dr. Siddiqui made this recommendation at collegial review with Dr. Ritz, who denied the request and instead ordered a treadmill stress test. However, no one told Plaintiff that he should not take his medication on the day of the test so the results of the stress test were not reliable.

On September 22, 2017, Plaintiff fainted while he was working. His supervisor called for medical assistance. Plaintiff alleges that Nurse Tara Chadderton refused to treat him and said Plaintiff was "faking." Plaintiff further alleges that Nurse Chadderton also refused to provide medical treatment to Plaintiff on February 10, 2018 when Plaintiff told her that his hands and feet were swollen, causing him significant pain.

Dr. Caldwell (not a defendant in this matter) recommended that Plaintiff undergo a repeat stress test in July 2018. This request was presented in collegial review. Dr. Ritz denied it.

Defendants Siddiqui and Ritz filed their Motion for Summary Judgment, contending that Plaintiff did not submit any grievances that identify Dr. Ritz and therefore Plaintiff failed to exhaust his administrative remedies against Dr. Ritz. Defendants attached Plaintiff's relevant grievance records to their motion. Plaintiff fully exhausted a grievance dated November 8, 2017, and a grievance dated November 11, 2017 in which he stated that the treadmill test was not sufficient to determine the extent of his coronary artery disease (Doc. 42-1, p. 36-44).

Plaintiff also fully exhausted a grievance dated July 15, 2018 (*Id.*, p. 18-21). In that grievance, Plaintiff wrote that he needed to undergo additional testing to determine the cause of

his chest pain and status of his coronary artery disease. The grievance officer recommended the grievance be denied after noting that on August 2, 2018, Dr. Ritz denied a request for Plaintiff to undergo a repeat stress test (*Id*., p. 19). In his Response to Defendant's Motion for Summary Judgment, Plaintiff explains that this was the first time he learned that Dr. Ritz was the individual making the final decisions regarding the type of testing he could receive.

Defendants also note that the November 2017 grievances were the first grievances Plaintiff submitted regarding his claims in this lawsuit. In those grievances, Plaintiff mentioned a visit with Dr. Siddiqui on November 8, 2017. Defendants argue that any allegations of deliberate indifference that occurred prior to November 2017 should be dismissed. However, Plaintiff also stated in the November 2017 grievances that neither Dr. Siddiqui nor the Menard nurses told him to refrain from taking his medication on the day of the stress test (September 9, 2017), and therefore Plaintiff needed a repeat stress test (*Id*., p. 39, 43). Plaintiff also mentioned that Dr. Siddiqui needed to review the ER doctor's recommendations from Plaintiff's visit to Chester Hospital on August 2, 2017 (*Id*., p. 42).

Defendant Chadderton asks the Court to grant summary judgment in her favor because none of Plaintiff's grievances identify her or mention her encounters with Plaintiff on September 22, 2017 and February 18, 2018. In his Response, Plaintiff contends that it is irrelevant whether he named Defendant Chadderton in his grievances or submitted them during certain time frames. He points to the November 2017 grievances and the July 15, 2018 grievance as evidence that he exhausted his administrative remedies against Nurse Chadderton.

## Legal Standards

***Summary Judgment Standard***

Summary judgment is appropriate only if the moving party can demonstrate "that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

***Exhaustion Requirements***

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident or problem to his or her

institutional counselor, unless certain discrete issues are being grieved. 20 ILL. ADMIN. CODE § 504.810(a). The grievance must contain the following:

> …. factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.870(b).

If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within 2 months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director who shall review the same and make a final determination within 6 months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and (e). Inmates who intend to file suit are required to follow all steps and instructions in the grievance process before filing with the Court in order to "[allow prisons] to address complaints about the program [they administer] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

**Motion for Summary Judgment by Defendants Ritz and Siddiqui**

Defendants Ritz and Siddiqui contend that to the extent Plaintiff's Complaint alleges they were deliberately indifferent to Plaintiff's serious medical needs prior to November 2017, summary judgment should be granted in their favor. November 2017 is the first time Plaintiff submitted grievances regarding the allegations in this lawsuit. This argument is not entirely persuasive, however, because Plaintiff's November 2017 grievances recounted events that happened prior to November 2017. Regulations required Plaintiff to submit his grievances at Menard within 60 after the discovery of the problem. 20 ILL. ADMIN. CODE § 504.810(a). However, if an inmate submits a grievance outside of that timeframe but prison officials still address the merits of the grievance without rejecting it on procedural grounds, the grievance serves to exhaust the inmate's administrative remedies. *Maddox v. Love*, 655 F.3d 709, 721-22 (7th Cir. 2011).

Plaintiff submitted his first grievance regarding the allegations in this lawsuit on November 8, 2017. He submitted a similar grievance on November 11, 2017, in which he mentioned the August 2, 2017 ER visit and subsequent stress test that occurred on September 8, 2017. He further claimed that Dr. Siddiqui never reviewed his records from the August 2, 2017 ER visit and the September 8, 2017 stress test was not sufficient to determine whether Plaintiff had CAD. Officials at Menard issued a decision on the merits of these grievances, even though more than 60 days had passed since the August 2, 2017 ER visit (Doc. 42-1, p. 38, 41). The ARB noted "the issue of an outside hospital visit is beyond timeframes for review" but then determined that "based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration." (*Id.*, p. 36).

Consequently, Plaintiff exhausted his administrative remedies for his allegations that Dr.

Ritz and Dr. Siddiqui were deliberately indifferent to his serious medical needs starting on August 2, 2017.  In his November 2017 grievances, Plaintiff stated that he had not received proper medical care for his cardiac conditions since August 2, 2017.   Grievance officials at Menard and the ARB reached a decision on the merits of those grievances.   While the ARB deemed the issue of "an outside hospital visit" was outside the time frame for review, it is unclear from Defendants' Motion what portions of the grievance the ARB considered "the issue of an outside hospital." Plaintiff's November 2017 grievances do not complain about the care he received at the outside hospitals.   Instead, he identified problems with the care he received at Menard before and after those visits.

Defendants therefore did not meet their burden of establishing that Plaintiff failed to exhaust his administrative remedies from August 2, 2017 to November 2017.   Defendants did, however, establish that Plaintiff failed to properly grieve any incidents prior to August 2, 2017 related to his allegations in this lawsuit.   Therefore, to the extent that Plaintiff is alleging Dr. Ritz and Dr. Siddiqui were deliberately indifferent to Plaintiff's serious medical needs prior to August 2, 2017, Plaintiff failed to exhaust his administrative remedies regarding those allegations and summary judgment is granted in favor of Defendants Siddiqui and Ritz.

Defendants also argue that Plaintiff failed to exhaust his administrative remedies against Dr. Ritz because Plaintiff never identified Dr. Ritz by name in the grievances.   Designating August 2, 2017 as the starting point for Plaintiff's allegations of deliberate indifference against Dr. Ritz and Dr. Siddiqui, the Court finds that Plaintiff sufficiently exhausted his administrative remedies against Dr. Ritz.   Plaintiff was not required to identify Dr. Ritz by name. 20 ILL. ADMIN. CODE § 504.870(b).   In his Complaint, Plaintiff alleges that Dr. Ritz denied him necessary testing for coronary artery disease ("CAD"). Plaintiff submitted three grievances (two in November 2017

and one in July 2018) in whcih he described the reasons why he needed the CAD testing. It was not until Plaintiff received a response from the grievance officer to his July 15, 2018 grievance that he learned Dr. Ritz was the person responsible for denying Plaintiff's requests for CAD tests. At that point, his November 2017 grievances and July 2018 grievance had already been denied at Menard, and the ARB had already denied the November 2017 grievances.

The Court is unaware of any regulation or case law that would require Plaintiff to re-submit grievances (potentially past the pertinent deadlines) that had already been denied simply because he learned the name of a person involved in the events described in the grievances. Moreover, by submitting the November 2017 and July 2018 grievances, Plaintiff gave prison officials the opportunity to address Dr. Ritz's decisions. Accordingly, Dr. Ritz is not entitled to summary judgment on the exhaustion issue. Plaintiff's claim against Dr. Ritz (as well as Dr. Siddiqui) will proceed to the extent Plaintiff alleges they were deliberately indifferent beginning August 2, 2017.

**Motion for Summary Judgment by Defendant Chadderton**

Plaintiff does not contend that he identified Nurse Chadderton in any of his grievances. Instead, he argues that he was not required to do so. Plaintiff was not required to identify Defendant Chadderton by name. *Id*. However, he was required to include enough information in his grievances to alert prison officials that a staff member refused to treat his chest pains and fainting episodes in September 2017 and his swollen hands and feet in February 2018. Apart from mentioning that nurses did not tell Plaintiff to refrain from taking his medicine before the treadmill stress test on September 9, 2017, none of Plaintiff's grievances reference nursing care. Plaintiff does not reference any encounter with a nurse or other staff member on September 22, 2017 who refused to address his fainting, or his swollen hands and feet on February 10, 2018. Nurse Chadderton is therefore entitled to summary judgment.

## Conclusion

The Motion for Partial Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendants Stephen Ritz and Mohammed Siddiqui (Docs. 41 and 42) is GRANTED IN PART and DENIED IN PART.  The Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendant Tara Chadderton (Docs. 61 and 62) is GRANTED.  Plaintiff's Eighth Amendment claim against Dr. Siddiqui and Dr. Ritz for deliberate indifference to his serious medical needs from August 2, 2017-January 2019 will proceed.  All other claims, including Plaintiff's claim against Defendant Chadderton, are dismissed without prejudice. The Clerk of Court is directed to enter judgment accordingly at the conclusion of the case.

**IT IS SO ORDERED.**

**DATED:   March 15, 2021**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**